# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

DANIEL R. SPEARS, JEFFREY YELTON, )
KATHERINE LANG, DANIEL MASSA )
and RAYMOND R. COMMERS, individually )
and on behalf of all others similarly situated, )
         )
        Plaintiffs, )
         )
        v. )        Case No. 2:07-CV-88 JVB
         )
METROPOLITAN LIFE INSURANCE )
COMPANY d/b/a METLIFE, METLIFE )
SECURITIES, INC. d/b/a METLIFE, and )
ISTA FINANCIAL SERVICES )
CORPORATION, )
         )
        Defendants. )

## OPINION AND ORDER

This matter is before the Court on Defendants Metropolitan Life Insurance Company and

MetLife Securities, Inc. ("MetLife"), and Defendant ISTA Financial Services Corporation's

("ISTA Financial") Motions to Dismiss Plaintiffs Daniel R. Spears, Jeffrey Yelton, Katherine

Lang, Daniel Massa and Raymond R. Commers's First Amended Class Action Complaint [DE

26, DE 29] and the Plaintiffs' Motion to Take Judicial Notice [DE 127]. For the reasons set forth

below, the Court **GRANTS** Metlife and ISTA Financial's Motions to Dismiss [DE 26, DE 29]

and **DENIES** the Plaintiffs' Motion to Take Judicial Notice [DE 127].

## PROCEDURAL HISTORY

The relevant procedural history in this case is as follows: On February 16, 2007, the

Plaintiffs filed their Class Action Complaint against MetLife and ISTA Financial in the Circuit

Court of Lake County, Indiana. On March 19, 2007, the Plaintiffs filed a Motion for Class Certification. On March 22, 2007, the Defendants removed this case to this Court pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77p(c).

On April 6, 2007, MetLife and ISTA Financial moved to stay discovery and other proceedings. On April 12, 2007, the Plaintiffs amended their Class Action Complaint.[1] On May 17, 2007, Magistrate Judge Paul R. Cherry granted MetLife and ISTA Financial's motion to stay discovery and stayed all discovery pending the anticipated filing of MetLife and ISTA Financial's Motions to Dismiss.

On June 1, 2007, MetLife and ISTA Financial filed their Motions to Dismiss. This case was transferred to the undersigned District Judge on July 27, 2007. On March 21, 2008, the Plaintiffs moved for a partial lifting of the discovery stay.

On March 31, 2008, the Court *sua sponte* raised the issue of subject matter jurisdiction and ordered additional briefing. At that time, MetLife and ISTA Financial's Motions to Dismiss were denied pending resolution of the jurisdictional issue. On May 7, 2008, Magistrate Judge Cherry took the Plaintiffs' motion for a partial lifting of the discovery stay under advisement pending resolution of the jurisdictional issue.

On June 27, 2008, the Court found it had subject matter jurisdiction and denied Metlife and ISTA Financial's Motions to Dismiss. On July 1, 2008, the Plaintiffs renewed their motion to lift the discovery stay, which Magistrate Judge Cherry granted. On July 30, 2008, the Plaintiffs renewed their Motion for Class Certification. On July 31, 2008, MetLife and ISTA Financial moved for permission to appeal the Court's June 27, 2008, Order. On August 4, 2008,

---

[1] The amended complaint the Plaintiffs filed on April 12, 2007 is captioned "First Amended Class Action Complaint." The complaint will be referred to as the amended complaint in this order and opinion.

the Court denied that motion, vacated the June 27, 2008, Order, set the case for oral argument, and ordered discovery to continue in the case.

On September 23, 2008, oral argument was held on MetLife and ISTA Financial's Motions to Dismiss and discovery was stayed pending ruling on the motions.

On March 26, 2009, the Court issued an order indicating its intention to grant the Defendants Motions to Dismiss, and denied as moot the outstanding class certification and discovery motions. On May 21, 2009, the Plaintiffs filed a Motion to Take Judicial Notice. MetLife and ISTA Financial subsequently filed their opposition to the Plaintiffs' motion.

## FACTUAL ALLEGATIONS

The following factual allegations are taken from the Plaintiffs' Amended Complaint.

### A. The Parties

The five named Plaintiffs in this case are full-time public school teachers employed by three local school districts: Porter County Education Services, Merrillville Community School Corporation, and Michigan City Area School Corporation.

The Plaintiffs, with the exception of Raymond Commers, are members of the Indiana State Teachers Association ("ISTA"). The ISTA is an organization comprised of about 50,000 public school teachers. The ISTA, in conjunction with the National Education Association, provides services to its members through the Uni/Serve Program. The Uni/Serve Program provides ISTA members with Uni-Serve Directors and support staff. The local Uni/Serve Director serves as the primary negotiator for ISTA members in the negotiation of collective bargaining agreements for public school corporations, including matters related to investment of

teacher retirement funds.

Metropolitan Life Insurance Company d/b/a MetLife and MetLife Securities, Inc. d/b/a MetLife are financial services and insurance companies that conduct business throughout Indiana, including Lake County, and are wholly-owned subsidiaries of MetLife, Incorporated. ISTA Financial Services Corporation is a wholly owned subsidiary of ISTA and is a financial adviser for members of ISTA and public teachers. ISTA Financial does business throughout Indiana, including Lake County. MetLife and ISTA Financial are partners in the sale of securities to public teachers, including the Plaintiffs.

**B.      Background**

The Indiana legislature passed Senate Bill 199, in 2002, to address the financial burden placed on school corporations to fund public teacher retirement plans. Senate Bill 199 permitted school corporations to borrow funds, via a bond process, to pay accrued teacher retirement obligations. After school corporations borrowed funds to satisfy the accrued retirement obligations, teachers were permitted to invest funds in traditional retirement plans established pursuant to Sections 401(a) and 403(b) of the Internal Revenue Code and in a plan for the payment of retiree medical expenses structured as a "voluntary employee beneficiary association" trust commonly referred to as "VEBA" pursuant to Section 501(c)(9) of the Internal Revenue Code.

The Plaintiffs claim that the school corporations negotiated with local bargaining units of ISTA concerning the specific financial plans to which the proceeds of the bond issues would be contributed. The Plaintiffs allege that, at the time Senate Bill 199 was passed, MetLife, ISTA

and ISTA Financial were in partnership, and MetLife used ISTA Financial as its primary point of contact in the marketing and sale of investments to teachers funded by Senate Bill 199.

The Plaintiffs contend that MetLife paid ISTA Financial and its employees commissions, monies, and fees for selling MetLife investment products. The Plaintiffs allege that, in exchange for an implied and overt endorsement exclusively of MetLife products by Uni/Serve representatives and ISTA Financial employees, MetLife provided ISTA and ISTA Financial or its officers, directors and employees with undisclosed benefits, payments, fees and commissions. Therefore, the Plaintiffs claim that because of the financial relationship between the Defendants, they had a significant financial incentive to lure ISTA members and teachers into purchasing MetLife investment retirement products, even though the purchase of these products was not in their best financial interests.

Next, the Plaintiffs contend that neither the Defendants nor the Uni/Serve Directors who led the negotiations with the local school districts ever advised the teachers and ISTA members of the financial connections and rewards paid to ISTA Financial by MetLife when those investment products were sold. Because of the partnership between the Defendants, MetLife investment option plans were never accurately or truthfully represented to ISTA members and, as a result, the local bargaining units voted in favor of using MetLife as the vehicle for investment of the Senate 199 funds.

The Plaintiffs allege that Defendants sold MetLife investment retirement products to teachers in a variety of ways. On some occasions, the Uni/Serve Directors would simply promote and represent to the local bargaining units that MetLife had the best available retirement options at the lowest costs. A second way in which the Uni/Serve Directors would allegedly promote the

sale of MetLife investment products was by Uni/Serve Directors soliciting multiple bids from providers of similar-type retirement products and then skewing the competing proposals to reflect that MetLife had the best retirement products at the best costs. According to the Plaintiffs, Michigan City Area School Corporation and Merrillville Community School Corporation are two local school districts where local collective bargaining units approved MetLife as the sole provider for retirement funds where there were no competitive bids. Furthermore, the Plaintiffs claim that the local Uni/Serve Directors either exclusively promoted MetLife or included MetLife as one of the competitive bid proposals for investment of retirement funds.

The Plaintiffs next contend that Mary Junglas, the Uni/Serve Director for Porter County Education Services skewed proposals of competing bidders in favor of MetLife retirement investment options. The Plaintiffs claim that with the advice, consent, and urging of ISTA Financial and MetLife, Junglas prepared a summary of the various retirement investment plans. This summary, which was referred to as the VEBA Vendor Comparison, was presented to the Porter County Education Services' teachers by Junglas and falsely represented MetLife as having the best investment options. For example, the VEBA Vendor Comparison showed that the benefits under the MetLife VEBA investment option were "inheritable by any beneficiary;" however, in reality, this statement was false because the MetLife option was, in fact, not inheritable under Internal Revenue Service regulations at that time. The Plaintiffs further assert that VEBA Vendor Comparison was false and misleading because Junglas omitted from the comparison MetLife's mutual fund expenses of approximately ninety basis points.

Next, the Plaintiffs allege that, at a meeting held on September 28, 2006, with Porter County Education Services' teachers, which included Spears and Massa, Junglas stated that the

school corporation "d[id] not care" where the retirement funds were invested and the other investment options "cost more" than the MetLife plan. At that same meeting, Junglas allegedly falsely represented that only MetLife could provide an inheritable VEBA plan. In addition, the Plaintiffs claim that, on October 1, 2006, at a meeting of more than a dozen public teachers, Junglas made similar types of false misrepresentations, and she continued to set up and lead other meetings with Indiana public teachers where she made similar false representations with respect to the MetLife VEBA plan.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). A court will view all well-pleaded allegations in a light most favorable to the plaintiff. *Whirlpool Fin.*

*Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).


## DISCUSSION

The Plaintiffs' eight-count Amended Complaint alleges violations of federal securities laws (Counts I and II), violations of the Indiana Consumer Deceptive Practices Act (Count III), violations of the Racketeer Influenced and Corrupt Organizations Act (Count IV), unjust enrichment (Count V), breach of fiduciary duties (Count VI), and common law fraud (Count VII). In Count VIII, the Plaintiffs request certification of a class action.


**A.      Federal Claims**

**(1)      *Counts I and II***

In Counts I and II of the Amended Complaint, the Plaintiffs allege federal securities fraud claims against the Defendants. Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") prohibits the "use or employ, in connection with the purchase or sale of any security . . . , [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Securities Exchange Commission ("SEC") Rule 10(b)–5, which implements § 10(b), makes it unlawful:

> (a) To employ any device, scheme, or artifice to de-fraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. There is an implied private right of action under § 10(b), as provided by the statute for those purchasers or sellers of securities who have been injured by its violation. *Tellabs*, *Inc. v. Makor Issues & Rights*, *Ltd.*, 127 S.Ct. 2499, 2507 (2007) (citing *Dura Pharms.*, *Inc. v. Broudo*, 544 U.S. 336, 341 (2005)). In order to state private action under § 10(b), a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (citation omitted). Moreover, in cases premised on an omission, a plaintiff must allege a duty to disclose the omitted information. *Zurich Capital Mkts. v. Coglianese*, 332 F. Supp. 2d 1087, 1105 (N.D. Ill. 2004) (citing *Chiarella v. United States*, 445 U.S. 222, 228 (1980)).

In 1995, Congress amended the Exchange Act by the passage of the Private Securities Litigation Reform Act ("PSLRA"), which established heightened pleading standards for private securities fraud actions.[2]  Section 21D of the PSLRA provides that a securities fraud complaint must (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is

---

[2]The PSLRA applies only to a "suit that is brought as a plaintiff class action." 15 U.S.C. § 78u–4(a)(1). However, "the statute's rules apply whether or not the class is certified." *Higginbotham v. Baxter Int'l*, 495 F.3d 753, 756 (7th Cir. 2007).

formed" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). Furthermore, the PSLRA requires that "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." *Id.* § 78u-4(b)(3)(A).

The required state of mind in a § 10(b) case is scienter, which means "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Pugh*, 521 F.3d at 693 (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007)). The Supreme Court has directed courts to dismiss a complaint unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S.Ct. at 2510. Thus, a court "must weigh the strength of the plaintiffs' inferences in comparison to plausible nonculpable explanations for the defendants' conduct." *Pugh*, 521 F.3d at 693 (citing *Tellabs*, 127 S.Ct. at 2510).

Under Seventh Circuit precedent, recklessness continues to be a sufficient basis to impose civil liability under § 10(b) and SEC Rule 10b-5.[3] Recklessness requires a showing of "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) (quoting *In re*

---

[3]Regarding recklessness, Justice Ginsburg stated in *Tellabs*:

We have previously reserved the question whether reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b-5. *See Ernst & Ernest v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Every Court of Appeals that has considered the issue has held that a plaintiff may meet the scienter requirement by showing that the defendant acted intentionally or recklessly, though the Circuits differ on the degree of recklessness required. The question whether and when recklessness satisfies the scienter requirement is not presented in this case.

127 S.Ct. at 2507 n. 3 (citation omitted).

*Scholastic Secs. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001)). With these principles in mind, the Court addresses the individual elements of the Plaintiffs' § 10(b) claims.

(a)     *Purchase or Sale of Securities*

Rule 10b-5 prohibits fraudulent or deceptive acts only if taken "in connection with the purchase or sale of a security." 17 C.F.R. § 240.10b-5. The Supreme Court has held that an actual purchase or sale of a security is an essential element of a Rule 10b-5 claim. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 1510 (2006). Furthermore, a plaintiff seeking to represent a class must "provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that . . . sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Here, the Plaintiffs have not identified a single specific securities transaction in their Amended Complaint, and the supplemental affidavits filed by the five named Plaintiffs do not set forth purchases of specific securities relevant to this lawsuit.

The supplemental affidavits establish that Spears, Lang, and Massa had not purchased any securities on which their claims are based at the time the lawsuit was first filed on February 16, 2007, or when they amended their Complaint on April 12, 2007. (Spears's Supp. Aff., App. 1; Massa's Supp. Aff., App. 1; Lang's Supp. Aff., App. 1.) Instead, Spears, Lang, and Massa purchased securities for the first time on April 16, 2007, or April 18, 2007, through MetLife's Financial Freedom account, which was not a VEBA account, about two months after the lawsuit was first filed on February 16, 2007. (*Id*.) Their claims fail because they had not purchased the

11

securities upon which their claims are purportedly based when they filed either their original or amended complaint.

With regard to Yelton, it is not clear from his supplemental affidavit what securities, if any, he purchased or when he purchased them. (Yelton Supp. Aff., App. 1.) His claim, therefore, fails because he has not identified with adequate specificity any securities transaction, which is an essential element of a Rule 10b-5 claim and a mandatory part of the sworn certification required from each plaintiff under the PSLRA.

Commers, who is the fifth named Plaintiff, alleges that he started making securities purchases in January 2004 and continued to do so through at least March 28, 2007. (Commers's Supp. Aff., App. 1.) However, he had already selected the MetLife Guaranteed Asset Account and does not allege that he ever changed that option. (*Id.*) Therefore, Commers never purchased MetLife's VEBA investment product.

At oral argument, the Plaintiffs' attorney contended that from the Plaintiffs' perspective the purchase or sale of a security occurs at the time the collective bargaining unit approves the purchase or sale of securities. (Tr. 48:21-23.) Here, the Plaintiffs assert that the sale of securities occurred in Fall 2006, which was before the lawsuit was filed on February 16, 2007. (*Id.* at 48:23-50:1.) According to the Plaintiffs, the "actual mechanics of the purchase doesn't [sic] occur until later, but the approval and process of purchasing begins when the collective bargaining unit approves of the purchase." (*Id.* at 49:2-4.) Furthermore, the Plaintiffs assert that "the fraud, the representations that occur, come from the Uni/Serve representative in getting these collective bargaining units to approve the sale, approve the purchase of MetLife products from this pension money." (*Id.* at 49:5-9.)

At oral argument, the Plaintiffs' attorney referred to case law and authority that he alleged supported his position. The Court subsequently requested that the Plaintiffs' attorney file the authority he cited during oral argument; however, he failed to do so. Instead, the Defendants' attorneys filed those cases they believed to be referenced by the Plaintiffs' attorney during oral argument. These cases concern the Employee Retirement Income Security Act of 1974, which is not at issue in this case, and are not as represented by the Plaintiffs' counsel at oral argument. (*Id.* at 54:11-55:1, DE 121.)

Accordingly, the Plaintiffs' have failed to plead the essential element of a purchase or sale of securities as required by Rule 10b-5.


(b)     *Material Misrepresentation or Omission*

In order to state a claim under § 10(b), the Plaintiffs must allege "a material misrepresentation or omission by the defendant." *Pugh*, 521 F.3d at 693. The PSLRA requires that a securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). If these pleading standards "are not met" then "the court shall, on the motion of any defendant, dismiss the complaint." *Id*. § 78u-4(b)(3)(A).

The only misrepresentations identified with any degree of specificity in the Amended Complaint are a series of oral statements allegedly made by Junglas in meetings held in various

locations in Northwest Indiana in Fall 2006.[4]  In essence, the Plaintiffs claim that Junglas

misrepresented that MetLife had the best investment options, the VEBA investment product was

inheritable by any beneficiary, and the true cost of the MetLife investment product by failing to

disclose MetLife's mutual fund expenses of approximately 90 bonus points. (Am. Compl. ¶¶ 83,

84, 87, 88, 94-107.) The Plaintiffs further allege that Junglas distributed a one-page summary

spreadsheet or document referred to as the VEBA Vendor Comparison of the available

investment plans and options. (*Id*. ¶¶ 82, 85, 88, 89, 92, Ex. A.)

The Plaintiffs fail to link Junglas's alleged false statements to either of the Defendants.

Initially, the Plaintiffs do not allege that Junglas was an employee or agent of either of the

Defendants. Rather, they claim Junglas was "a local Uni/Serve representative in Northwest

Indiana." (Am. Compl. ¶ 79.) The Plaintiffs state that the Uni/Serve program is a program of the

Indiana State Teachers Association which "provide[s] collective bargaining services" to its

members and the Uni/Serve program "provide[s] local ISTA members with a Uni/Serve director

and support staff." (*Id.* ¶¶ 28-31.)

Even though Junglas is not alleged to be an employee or agent of either of the

Defendants, the Plaintiffs seek to hold them liable for Junglas's statements by stating that "it is

plaintiffs' best belief and knowledge that substantially most of the information given to public

educators by Uni/Serve directors regarding retirement investment products originates with

MetLife employees and representatives." (Am. Compl. ¶ 47.) Similarly, the Plaintiffs submit that

"representations made to the ISTA membership by the Uni/Serve representative of the various

---

[4]Junglas allegedly made false statements regarding the MetLife investment plan at meetings held on September 28, 2006, October 1, 2006, October 4, 2006, and at other times during Fall 2006. (Am. Compl. ¶¶ 94-107.)

investment proposals were prepared with the assistance of one or more of the Financial Services Corp. employees and/or MetLife employees." (*Id.* ¶ 75.) The Plaintiffs further claim that Junglas prepared the VEBA Vendor Comparison "with the advice, consent and urging of the Financial Services Corp. and MetLife" and that "MetLife had knowledge and scienter of Junglas' actions." (*Id.* ¶¶ 83, 98.)

Even if the Court were to assume that Junglas was the Defendants' employee or agent, the generic allegations contained in the Amended Complaint concerning any misrepresentations by unidentified speakers on unspecified dates in unstated locations or misrepresentations in other unidentified documents do not satisfy the strict pleading requirements of the PSLRA. *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) ("[M]ere allegations of fraud, corruption, or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.") With respect to Junglas's alleged misrepresentation that the VEBA investments were inheritable by any beneficiary, any misrepresentation by Junglas is immaterial, as a matter of law, because the only Plaintiffs identified as having heard that misrepresentation are Spears, Massa, and Lang. (Am. Compl. ¶¶ 87, 88, 90, 94.)  However, these three Plaintiffs purchased securities after this lawsuit was filed on February 16, 2007, and after the Plaintiffs amended the Complaint on April 12, 2007, and these Plaintiffs never actually purchased products through a MetLife VEBA investment product. (Spears's Supp. Aff., App. 1; Massa's Supp. Aff., App. 1; Lang's Supp. Aff, App. 1.) Accordingly, as a matter of law, Junglas's alleged statements concerning the inheritability of products purchased through MetLife's VEBA investment product could not have been material to the Plaintiffs, even if the statements were false. *Blue Chip*, 421

U.S. at 747 (securities fraud class limited to plaintiffs "who have at least dealt in the security to which the prospectus, representation, or omission relates.") Furthermore, the Plaintiffs have not alleged that Junglas knew, or had reason to know, the MetLife VEBA investment product was not inheritable by any beneficiary when she allegedly made the statement.

Regarding the alleged misrepresentations that MetLife had the best investment options, even if Junglas's statements could properly be attributed to the Defendants, the Plaintiffs' vague allegations that unidentified people at unidentified times said that the MetLife plan was the "best plan available" without identifying who made the statements, to whom, and when is not enough to satisfy the strict pleading requirements of the PSLRA. *Tricontinental Indus.*, *Ltd. v. PricewaterhouseCoopers*, *LLP*, 475 F.3d 824, 844 (7th Cir. 2007) (the plaintiffs are required to plead the "who, what, when, where, and how" of the alleged fraud).

Next, the Plaintiffs attempt to plead an omission claim by alleging that Junglas did not disclose the true cost of MetLife's investment plan. The Plaintiffs claim that the VEBA Vendor Comparison "is false and deceptive because it completely omits all of MetLife's mutual fund expenses of approximately 90 basis points in the summary, creating the false impression on such statement that the MetLife investment option had less fund expenses than the other vendor plans set out in such summary." (Am. Compl. ¶¶ 85, 87, 106.) However, the Plaintiffs have again failed to allege with any specificity any omission on the part of the Defendants as it relates to the failure to disclose that MetLife's investment plan included expenses of "approximately 90 basis points." (*Id.* ¶ 85.) For example, the Plaintiffs have not identified what the total costs for the MetLife investment plan should have been and what the total costs are for the other investment plans. Furthermore, the Plaintiffs have not alleged that Junglas or anyone else knew that her

comparison of the various investment options was false.[5] Accordingly, the Plaintiffs' omission claim fails.[6]

The Court, having considered all the allegations contained in the Plaintiffs' Amended Complaint and contentions raised during oral argument, finds that the Plaintiffs have failed to plead facts with the specificity and particularity required by the PSLRA. The Plaintiffs have failed to establish that any of the Defendants' alleged statements pertaining to the purchase or sale of securities constitute material misrepresentations on the part of the Defendants, or that the Defendants omitted material information as part of any alleged misrepresentations. Moreover, the five named Plaintiffs have not established that they knew or even relied on these alleged statements when making purchases of securities.

(c)     *Scienter*

Under the PSLRA, the Plaintiffs must "with respect to each act or omission alleged . . .

---

[5]The prospectus for the Financial Freedom Account filed with the Securities and Exchange Commission, on May 2, 2006, sets forth the very information the Plaintiffs allege that Junglas did not disclose: "Pursuant to the terms of the Contract, our total Separate Account Charge will not exceed .95% of your average balance in the investment divisions." (Ex. 1 to MetLife's Reply Brief.) *See In re Keyspan Corp. Secs. Litig.*, 383 F.Supp.2d 358, 377 (E.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed."); *Higginbotham*, 495 F.3d at 759 ("The securities laws do not require firms to 'disclose' information that is already in the public domain."); *see also Gen.. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (a party may refer to publicly available documents including SEC filings, without converting a motion to dismiss into a summary judgment motion); *Cortec Indus., Inc. v. Sum Holding LLP*, 949 F.2d 42, 47-48 (2d Cir. 1991) (a court may consider disclosures made in a prospectus filed with the SEC on a Rule 12(b)(6) motion).

[6]To state a claim on the basis of an omission, the Plaintiffs must establish the existence of a duty to disclose arising from a fiduciary relationship or some other special relationship. *Gallagher v. Abbott Labs.*, 269 F.3d 806, 808-09 (7th Cir. 2001). The Plaintiffs have not alleged any facts supporting the existence of any relationship with the Defendants, let alone a relationship that would give rise to a duty of disclosure. None of the five named Plaintiffs alleges that he or she ever met with or spoke with any person employed by or who was an agent of the Defendants. Absent some factual basis for recognizing a duty of disclosure, the Plaintiffs' claims on the basis of omissions must be dismissed. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944-46 (7th Cir. 1989).

state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind in a § 10(b) case is scienter, which means "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Pugh*, 521 F.3d at 693 (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007)). As stated, the Supreme Court has directed courts to dismiss a complaint unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S.Ct. at 2510. Thus, a court "must weigh the strength of the plaintiffs' inferences in comparison to plausible nonculpable explanations for the defendants' conduct." *Pugh*, 521 F.3d at 693 (citing *Tellabs*, 127 S.Ct. at 2510).

Here, the Plaintiffs fail to state with particularity that the material misrepresentations and omissions they allege the Defendants made were false or gave rise to a strong inference of scienter. In the Amended Complaint, the Plaintiffs make general and conclusory allegations that "the acts and actions of the defendants . . . were willful" (Am. Compl. ¶ 115), and that "MetLife had full and actual knowledge of the materially false and misleading statements and the material omissions . . . that were used to induce and lure public educators in Indiana to purchase MetLife retirement products." (*Id.* ¶ 119.) Moreover, the Plaintiffs claim that "MetLife pays to [ISTA Financial] and/or its employees, commissions, monies and/or fees for selling MetLife investment products" and MetLife provides ISTA and [ISTA Financial] and/or its officers and directors with undisclosed benefits, payments, fees and/or commissions." (*Id.* ¶¶ 44, 46.) However, these types of general, conclusory allegations are insufficient to meet the PSLRA's "strong inference" standard, which requires the Plaintiffs to plead specific facts, not conclusions.

Next, the Plaintiffs have failed to allege sufficient facts supporting an inference that Junglas intentionally misrepresented the tax treatment of investments made through the MetLife VEBA by representing that they were inheritable by any beneficiary, as opposed to merely being mistaken about this tax law issue.

Finally, with respect to the alleged representation about the true cost of the VEBA accounts, the fact that the VEBA Vendor Comparison Junglas allegedly handed out at the meetings did not provide comprehensive expense information, the omission of this information cannot be viewed as being intentionally misleading. Therefore, the Plaintiffs have failed to allege any facts supporting a strong inference that Junglas intended to deceive the Plaintiffs or that she knew her statements were false. In any event, Spears, Massa, and Lang are the only Plaintiffs who appeared to have received the VEBA Vendor Comparison and they did not purchase any securities through the MetLife VEBA product.

Even assuming *arguendo* that the Plaintiffs have alleged sufficient facts to support a strong inference of scienter on the part of Junglas, they have failed to plead a strong inference of scienter as to each of the Defendants.[7] In order to "proceed beyond the pleading stage, the plaintiff must allege as to each defendant facts sufficient to demonstrate a culpable state of mind" and any "allegations of scienter made against one defendant cannot be imputed to . . . other individual defendants." *Tellabs*, 127 S.Ct. at 2511 n.6 (citation omitted). Here, the Plaintiffs do nothing more than summarily state that Junglas's state of mind should be imputed to the Defendants without identifying any particular facts which would support their claim. The

_____

[7]As discussed *supra* there is no evidence to suggest that Junglas is the Defendants' employee or agent.

Plaintiffs allegations, therefore, do not support a strong inference of scienter as to the Defendants.

The Plaintiffs allegations that there is a strong inference of scienter because there were commissions and other "undisclosed benefits" gained by the Defendants, which constitute omissions, is without merit. (Am. Compl. ¶¶ 44-49.) These conclusory allegations are not enough to show that the Defendants intended to defraud the Plaintiffs and they do not overcome the non-fraud inference that the Defendants were engaged in ordinary business activity. In other words, normal compensation or the incentive to increase corporate profits are common business practice. *See e.g., Stavros v. Exelon Corp.*, 266 F.Supp.2d 833, 848 (N.D. Ill. 2003) ("maximizing both earning potential on corporate debt offerings and executive compensation are 'the goals of all corporate executives; as such, they do not even remotely suggest fraudulent motivation.'") (citation omitted); *In re Brightpoint Sec. Litig.*, 2001 WL 395752, at *13 (S.D. Ind. Mar. 29, 2001) ("[A] plaintiff cannot allege scienter based merely upon a defendant's position within the company, a desire to increase incentive compensation, or similar factors that would be true for nearly all corporate executives.") Moreover, any "undisclosed benefits" regarding the expenses of approximately .90% (or 90 basis points) charged to holders of the Financial Freedom Accounts were, in fact, disclosed to the public through the prospectuses filed by MetLife. Likewise, the Plaintiffs have failed to assert a duty to disclose on the part of the Defendants. Accordingly, any suggestion that the Defendants attempted to defraud the Plaintiffs just because they earned profits in the course of doing business does not support an inference they intended to defraud or deceive the Plaintiffs.

The Court, having considered all of the allegations contained in the Plaintiffs' Amended

Complaint finds that the Plaintiffs have failed to allege facts supporting a strong inference that Junglas and the Defendants intended to deceive them by making materially false statements or omitting material information. Moreover, the Plaintiffs have failed to demonstrate that Junglas and the Defendants acted with the type of recklessness needed to establish a Rule 10b-5 claim. Accordingly, when weighing the Plaintiffs' inferences of fraud on the part of Junglas and the Defendants, the Court finds there are "plausible nonculpable explanations" for Junglas and the Defendants' conduct, which may conceivably be that Junglas and the Defendants were simply mistaken about certain aspects of the securities at issue in this case. *Pugh*, 521 F.3d at 693 (citing *Tellabs*, 127 S.Ct. at 2510).

(d)     *Reliance*

In order to establish a Rule 10b-5 claim, the Plaintiffs must show that they relied on Junglas or the Defendants' alleged misrepresentations regarding the MetLife VEBA securities at issue in this case. Even assuming *arguendo* that the Defendants made materially false statements or omissions, there is no evidence that the Plaintiffs relied on these statements or omissions in purchasing their securities. The Plaintiffs' supplemental affidavits confirm that they did not purchase MetLife VEBA securities between September 28, 2006, the date of the first meeting when Junglas allegedly made false statements, and February 16, 2007, when the Plaintiffs filed their original complaint or even their April 12, 2007, Amended Complaint. In fact, there is no evidence in the record that the Plaintiffs have ever purchased MetLife VEBA securities.

As stated, Spears, Lang, and Massa first purchased securities through MetLife's Financial Freedom Account, which was not a VEBA account, on April 16, 2007, or April 18, 2007. Yelton

received investment options in July 2007; however, it is not clear from his supplemental affidavit if he actually purchased any securities. (Yelton's Supp. Aff., App. 1.) Commers, who began making securities purchases in January 2004 and continued to do so through at least March 28, 2007, had already selected the MetLife Guaranteed Asset Account and does not allege that he ever changed that option. (Commers's Supp. Aff., App. 1.) Moreover, Commers has never alleged that anyone, including Junglas made statements to him upon which he reasonably relied and he does not allege he attended any of the meetings at which Junglas spoke.

Accordingly, the Court finds that none of the named Plaintiffs purchased any securities in reliance of or in connection with Junglas's alleged misrepresentations. Therefore, the Plaintiffs' Rule 10b-5 claim fails.

(e)     *Economic Loss*

To state a § 10b-5 claim, the Plaintiffs must allege that "the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." *Dura Pharm. Inc. v. Broudo,* 544 U.S. 336, 338 (2005). Thus, a plaintiff must allege facts that, if proven, will establish "what the relevant economic loss might be or . . . what the causal connection might be between that loss and the [alleged] misrepresentation." *Id*. at 347. However, "[t]o 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." *Id.* at 343 (emphasis in original).

Here, the Plaintiffs' securities fraud claim fails because they have not adequately plead how any alleged misrepresentations or omissions by the Defendants caused any economic losses.

In the Amended Complaint, the Plaintiffs assert that "as a direct and proximate result of the defendants' false and misleading statements and such fraudulent concealment, plaintiffs and the putative class members invested in retirement investments offered by MetLife and have been damaged as a result of such investments." (Am. Compl. ¶ 123.) These allegations, however, parallel the legally deficient allegations in *Dura* where the plaintiffs claimed they "'paid artificially inflated prices for Dura['s] securities' and suffered 'damage[s]'" as a result. *Dura*, 546 U.S. at 347. Such allegations do not establish a Rule 10b-5 claim.

Next, the Plaintiffs have not adequately plead "causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 342; *Tricontinental Indus.*, 475 F.3d at 843 (complaint cannot "simply" allege "that the misrepresentation 'touches upon' a later economic loss") (internal citations and quotation marks omitted). Here, the Plaintiffs do not allege that the representations made by Junglas regarding the inheritability of the MetLife VEBA caused them specific economic harm. Nor do the allege what losses were caused by any of the comparisons between the various vendors' investment products.

Accordingly, because the Plaintiffs have failed to plead the essential elements of a Rule 10b-5 cause of action, the Court dismisses Count 1 and Count 2 of the Plaintiffs' Amended Complaint.

**(2)** *Liability under Section 17(a)*

In addition to asserting a claim under Rule 10b-5, the Plaintiffs purport to assert a federal securities claim under Section 17(a) of the Securities Act of 1933. (Am. Compl. ¶ 113.) However, it is well established that there is no private right of action under Section 17(a).

*Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942-43 (7th Cir. 1989).


**(3)**    ***Count IV***

In Count IV of the Amended Complaint, the Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S. C. § 1962 *et seq*. The Plaintiffs contend that the Defendants have "committed, attempted to commit, and conspired to commit violations of the Exchange Act and the Indiana Securities Act," and such activity constitutes racketeering in violation of the RICO statute. (Am. Compl. ¶ 144.) The Plaintiffs contend that the Defendants "have also engaged in such racketeering activity by undertaking predicate acts of fraud and deception during the past two years, including those fraudulent and deceptive actions" described throughout the Amended Complaint. (*Id*. ¶ 145.)

The RICO statute, however, was enacted to "eradicate organized, long-term criminal conduct" and does not provide civil litigants with a claim to be used in cases involving "garden-variety fraud actions," for the purpose of "turn[ing] routine commercial disputes into civil RICO actions." *Midwest Grinding Co.*, *Inc. v. Spitz*, 976 F.2d 1016, 1019, 1022 (7th Cir. 1992). The RICO statute expressly provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation." 18 U.S.C. § 1964(c). While the Plaintiffs also contend that it is possible they purchased products that are not securities and that predicate acts qualifying under RICO may have been committed in connection with those unidentified transactions, such speculation does not save the Plaintiffs' RICO claim.

Accordingly, Count IV of the Plaintiffs' Amended Complaint is dismissed.[8]

**B.     State Law Claims**

As a threshold matter, the Defendants contend that the Plaintiffs' state law claims must be dismissed because they are preempted by SLUSA, which provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). A "covered class action" is one in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. § 77p(f)(2)(A)(i)(II). Because this lawsuit involves a "covered class action" within the meaning of SLUSA, the Defendants move the Court to dismiss the Plaintiffs' state law claims.

The Plaintiffs bring this case as a class action, on behalf of themselves and other similarly situated persons, and allege that "there are common questions of law and fact to all members of the class which predominate over any questions affecting individual class members." (Am. Compl. ¶¶ 168, 171.) The Plaintiffs' state law claims purport to be based on

---

[8]The Plaintiffs RICO claim further fails because they have not plead the elements of such a claim with the required specificity. The elements of a RICO violation are comprised of "(1) conduct  (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Midwest Grinding Co., Inc.*, 976 F.2d at 1019 (citation omitted). In their Amended Complaint, the Plaintiffs have failed to plead the requisite elements of a RICO claim.

untrue statements or omissions of material fact or the use or employment of manipulative or deceptive devices or contrivances in connection with the purchase or sale of covered securities. Here, Counts III, V, VI, and VII each include or incorporate by reference allegations that the Defendants made untrue statements or omitted the disclosure of material facts. Because each of the Plaintiffs' state law claims falls within the scope of SLUSA, these claims are preempted by SLUSA.

Even assuming *arguendo* that the Plaintiffs' state law claims are not preempted by SLUSA, each claim is subject to dismissal by this Court on the following separate, independent bases.

**(1)     *Count III***

In Count III, the Plaintiffs assert a claim under the Indiana Consumer Deceptive Practices Act ("ICDPA"). The ICPDA, however, does not apply to transactions involving the sale of securities or insurance policies or contracts. Ind. Code § 24-5-0.5-2(a)(1). In their Amended Complaint, the Plaintiffs appear to recognize the exemption for securities transactions by pleading that the "acts and actions of the defendants with respect to the solicitation, marketing and sale of retirement products, other than registered securities, to ISTA members and public educators, . . . is a deceptive practice" as defined by Ind. Code § 24-5-0.5-3. (Am. Compl. ¶ 136.) The Plaintiffs attempt to plead their ICPDA claim on the solicitation of "investments in the MetLife Guaranteed Asset Account" ("GAA") and allege that the GAA is "not a security of any kind," but fail to allege that GAA is not an insurance policy or contract. (*Id.* ¶ 135.) Furthermore, the Plaintiffs fail to allege that any of the named Plaintiffs ever purchased or were solicited by

the Defendants to invest in the GAA.

In their Response to MetLife's Motion to Dismiss, the Plaintiffs attempt to argue, without citing to the Amended Complaint, affidavits, or any other documents, that unspecified "other monies were invested in other investment options that do not involve the sale of securities or insurance." (Pls.' Resp. to MetLife's Mot. to Dismiss at 21.) The Plaintiffs, however, fail to articulate which named Plaintiffs purchased products that fall within the scope of the ICDPA. Furthermore, as discussed *supra*, Spears, Lang, and Massa had not entered into any transactions with the Defendants when this lawsuit was filed, Yelton had not identified the transaction on which his claim was based, and Commers did not allege any specific false statements made by the Defendants. Accordingly, Count III of the Plaintiffs' Amended Complaint is dismissed.

**(2)  *Count V***

In Count V, the Plaintiffs allege a claim for unjust enrichment. The Plaintiffs contend that the Defendants have received the "benefit from the Plaintiff[s] in the guise of fees, costs and expenses related to the plaintiffs' investment of monies with the defendants" and "it would be unjust for the defendants to retain the benefits they have received from the plaintiffs and public educators whom the plaintiffs represent." (Am. Compl. ¶¶ 154, 156.)

"Unjust enrichment, also referred to as *quantum meruit* or quasi-contract, requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Allgood v. General Motors Corp.*, No. 102-CV-1077, 2006 WL 2669337, at *32 (S.D. Ind. Sept. 18, 2006) (citations omitted). A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery . . . where the circumstances are such that

under the law of natural and immutable justice there should be a recovery." *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citations omitted). The Restatement of Restitution sets out the theory that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* (citing Restatement of Restitution § 1 (1937)). To prevail on a claim of unjust enrichment, "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Paul v. I.S.I. Servs., Inc.*, 726 N.E.2d 318, 322 (Ind. App. 2000). Thus, "[t]he pivotal concept of 'unjust enrichment' is the occurrence of a wrong or something unjust . . . . Absent a wrong, intervention by equity is inappropriate." *Savoree v. Indus. Contracting & Erecting, Inc.,* 789 N.E.2d 1013, 1020 (Ind. App. 2003). It is well established that a plaintiff "may not pursue an action in *quantum meruit* . . . where the plaintiff has an adequate remedy at law." *Allgood*, 2006 WL 2669337, at *34 (citations omitted).

Here, the Plaintiffs do not articulate what wrongful benefit the Defendants received in this case and why they are entitled to the extraordinary remedy of an equitable claim for unjust enrichment. Instead, the Plaintiffs argue that MetLife charged excessive fees and the collection of these fees constitutes unjust enrichment. Therefore, the Plaintiffs have failed to link their generic allegations to the specific fees paid by the five named Plaintiffs and have failed to explain why it is wrongful for the Defendants to collect fees from the Plaintiffs in exchange for providing services, even if those fees are higher than those charged by a competitor. The Plaintiffs' conclusory allegations are not sufficient to support a claim for unjust enrichment and Count V of the Plaintiffs' Amended Complaint is dismissed.

**(3)**     *Count VI*

In Count VI, the Plaintiffs allege a claim for breach of fiduciary duties. The Plaintiffs

contend that the Defendants had "a fiduciary duty of good faith and integrity in the presentation

of information about retirement investments through MetLife." (Am. Compl. ¶ 158.) The

Plaintiffs assert that "[ISTA] Financial Services Corp. with its partner, MetLife, wrongfully

breached the confidence and fiduciary relationship between the Uni/Serve director and the ISTA

membership with respect to the negotiation of collective bargaining agreements pertaining to the

investment of retirement funds with MetLife." (*Id.* ¶ 162.) The Plaintiffs further argue, in their

Response to MetLife's Motion to Dismiss, that ISTA owes fiduciary duties to its members and

that by entering into a contractual relationship with ISTA Financial, "MetLife merged its

operations in a partnership with ISTA." (Pls.' Resp. to MetLife's Mot. to Dismiss at 24.)

Here, the Plaintiffs fail to disclose or plead any facts that would give rise to a fiduciary

duty owed to them by the Defendants. The Plaintiffs do not cite any legal authority for the

proposition that the Defendants were fiduciaries of ISTA. Moreover, the Plaintiffs have not

alleged that they (or any other Indiana teacher) ever met with the Defendants' representatives or

that they ever consulted the Defendants for financial advice regarding the purchase of securities.

At most, the Plaintiffs allege they purchased unspecified securities from the Defendants. Because

the Plaintiffs' nebulous allegations fail to support any inference that the Defendants were

fiduciaries of the five named Plaintiffs, Count VI of the Amended Complaint is dismissed.


**(4)**     *Count VII*

In Count VII, the Plaintiffs allege a claim for common law fraud. The Plaintiffs claim

their Amended Complaint "sets out a proper and adequate cause of action for [common law] fraud, to the extend that some of the illicit and fraudulent conduct of MetLife led to the investment in instruments other than the sale of securities and insurance." (Pls.' Resp. to MetLife's Mot. to Dismiss at 25.) The Plaintiffs claim, for example, that "Junglas misrepresented that the MetLife VEBA investment was inheritable" which was a material misrepresentation of fact that was false. (*Id.*)

Under Indiana law, the elements of fraud include: "(1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party." *Tru-Cal*, *Inc. v Conrad Kacsik Instrument Sys.*, 905 N.E.2d 40, 44-45 (Ind. App. 2009) (citation omitted). Because the Plaintiffs' common law fraud claim does nothing more than incorporate the same deficient allegations as their federal securities claims, it fails for those same reasons. Thus, the Plaintiffs' failure to identify specific transactions on which their claims are based and specific misrepresentations made by the Defendants is a fatal defect to their common law fraud claim. Accordingly, Count VII of the Amended Complaint is dismissed.


**(5)    *Count VIII***

In Count VIII, the Plaintiffs requests certification of a class action. However, because this claim is not a substantive claim for relief, the Court dismisses Count VIII of the Amended Complaint.

### C.    Judicial Notice

The Plaintiffs request that this Court take judicial notice of a May 8, 2009, Final Order of the Indiana Commissioner of Insurance and two May 15, 2009, articles published in the Indianapolis Business Journal detailing the mismanagement of trust funds by the Indiana State Teachers Association Insurance Trust. The Plaintiffs request that the Court take judicial notice of this information when considering whether they have plead a cause of action against the Defendants in this case.

As discussed, the Court has determined that the Plaintiffs have failed to plead a cause of action under any of the federal and state claims it has asserted in its Amended Complaint. Because the information the Plaintiffs request that this Court take judicial notice of does not relate to any party in this litigation and the Plaintiffs have failed to establish how the issues raised in these documents pertain to any of the claims or issues alleged in their Amended Complaint, the Court declines to take judicial notice of these documents. Moreover, the issues raised in these documents relate to long-term disability insurance benefits and medical insurance benefits, and not the purchase of securities and investment products. Accordingly, the Plaintiffs' Motion to Take Judicial Notice is denied.

### D.    Conclusion

For the foregoing reasons, the Court **GRANTS** Metlife and ISTA Financial's Motions to Dismiss [DE 26, DE 29] and **DENIES** the Plaintiffs' Motion to Take Judicial Notice [DE 127]. Accordingly, the Plaintiffs' Amended Complaint is dismissed.

SO ORDERED on August 4, 2009.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE